## ABATEMENT OF PUBLIC NUISANCES.

Circuit Court of Cuyahoga County.

JOHN SCHUESZLER v. THE CLEVELAND, MEDINA & SOUTHERN ELECTRIC RAILWAY COMPANY AND ALBERT R. GIBSON.

Decided, May 28, 1900.

*Nuisances—One Suffering no Peculiar Injury May Not Abate a Public Nuisance.*

One who suffers no peculiar injury from the existence of a public nuisance, such as a fence in a public highway, has no right to abate the nuisance, when it does not interfere with public travel in the highway.

*Dickey, Brewer & McGowan,* for plaintiff in error.
*White, Johnson & McCaslin* and *Hackney & Johnson,* contra.

CALDWELL, J.; MARVIN, J., and HALE, J., concur.

We reverse this case and remand it for a new trial. At the beginning of the trial below admissions were made of certain facts by the attorney opening the case to the jury, and upon his statements taken as facts in the case, the court entered a judgment against the plaintiff below, who brings the action here to have it reversed.

The question was discussed here as to whether that is proper practice, but we find it unnecessary to say much on that subject. We have examined the bill of exceptions, which consists very largely of what the attorney said and what was stated on the other side in answer, and then the second statement by way of a reply made to the jury by the attorney for the plaintiff. The court supposed that the attorney had stated every fact necessary to be proved on the other side, that is, had admitted every fact in order to defeat the plaintiff, and that being true, the court entered judgment against the plaintiff.

The defendant in this action, the Cleveland, Medina & Southern Railway Company, was constructing its road along a highway at a point where a farmer had his fence a few inches or

perhaps a foot or two, in the highway, just as many farmers have their fences, and the railroad company undertook to take down the fence and put it back on the line where it should have been.

The farmer and his wife and his son-in-law, Schueszler, came out to defend the fence, and drove off the employees of the railroad company; thereupon the company had the parties arrested for obstructing the highway, under Section 6921, Revised Statutes.

Schueszler was cleared of the charge made against him, and brought this action for damages.

The statement made by the plaintiff's attorney in opening his case seems to admit, on behalf of his client, that the fence was in the highway; and that being true the court thought if that fact was established that it would justify the railroad company in putting it back upon the line. The statement included an allegation that the public had all of the highway it needed for any lawful purpose, and that the purpose for which the railroad company was proposing to use it was an unlawful purpose.

Now, whether that was unlawful or not we do not know. If this was a steam railroad, or a railroad in the nature of a steam railroad, there is no doubt but that an appropriation in the highway would be necessary before it could go upon the highway, while if it comes under the very noted Cumminsville case in 14 O. S., and is merely the usual mode of local traffic upon the highway, an appropriation may not be necessary; and we are unable to learn from this bill of exceptions which kind of a railway it is. There is no statement that shows which kind of a railway it is and no assumption can be made that it is one kind or the other. Even an electric road may come under the head of the case decided in 35 O. S., as a steam railroad. Electric roads are becoming of such length and of such a nature that there is a point somewhere where it becomes necessary for them to appropriate a right-of-way in the highway. Where the line is that marks the difference between a street railroad and a railroad that passes through the country for general traffic, we do not attempt to say. We have held, though, in another case

that it was not necessary for this company to appropriate. But the proof was not very clear before us as to the character of the road they were going to build. It was insisted that the proof was sufficient to show that they were to have their tracks in such shape that no other person could possibly use it, as in the city, by driving upon it or crossing it except in such places as crossings are made. That case has gone to the Supreme Court, where, perhaps, some law will be determined as to the character of this road. But the evidence was not very clear upon that point and we held it the same as a street railway—that they had a right to pass without appropriation.

The law in regard to this fence, like many other nuisances that exist, is, that not every person who uses the highway has a right to abate the nuisance. If a man can travel upon the highway, as everybody else does, then because some one is trespassing upon the highway with a fence which does not interfere with his travel upon the highway, he has no right whatever to abate the nuisance. A man driving along and seeing a fence that does not interfere with him, has no right to get out and knock down the fence; there must be a damage to him that is peculiar to him and interferes with his proper use of the highway before he can interfere with such a nuisance. It is a matter that belongs to the public, to the officers that have been elected to look after these things. So that if the railroad is the kind of a one that has no right upon that street or road, then it had no right to interfere by knocking down that fence, even if it did interfere with the company, because it would be there itself without right as to the adjoining owners. And if that is true then it would have no right to undertake to take into its hands the law and abate the nuisance any more than a private individual would have. It is there simply as a private individual. Whether it has a right to use the street or not without appropriation, we do not know from this bill of exceptions. But it is said that this party is seeking to recover for damages for being arrested for a thing that he admits he did do, for he answers and admits that he was upon these premises. Schueszler is not shown to be the owner of the fence, and if he was there maintaining that fence at all it was simply in helping the owner to keep it there

and that was the only offense which could be charged against him. And the right of this railroad company to use the street must clearly appear before it has a right to arrest people for using the street by having their fences out in the highway. This fact of the right of the railroad company does not appear, and it is not necessary to pass upon other questions.

There are other cases pending below; and I would say that in our investigation of these we find that this man Schueszler stands in quite a different relation to this matter than does the man who puts his fence upon the righway and keeps it there; Schueszler did nothing more than to keep parties from tearing it down, and whether that party had any right to take it down or not, we do not know from the bill of exceptions and, because of that lack of knowledge, we hold that the court below had no right to enter judgment in this case.